IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**ROBERT GORMAN,**

       Plaintiff,                                   No. 6:21-cv-01622-AA

   v.                                                     **OPINION & ORDER**

**DOUGLAS COUNTY SHERIFFS'
OFFICE; DEPUTY BRANDON
BLACK; SERGEANT JONATHAN
DORLAND; JOHN DOES 1-10,**

       Defendants.

_____

AIKEN, District Judge.

     This case comes before the Court on Defendants' Motion for Summary
Judgment. ECF No. 21. The Court concludes that this motion is appropriate for
resolution without oral argument. For the reasons set forth below, Defendant's
Motion is GRANTED.

## LEGAL STANDARD

     Summary judgment is appropriate if the pleadings, depositions, answers to
interrogatories, affidavits, and admissions on file, if any, show "that there is no
genuine dispute as to any material fact and the [moving party] is entitled to judgment
as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines
the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

During the relevant period, Plaintiff Robert Gorman was an Oregon State Police ("OSP") trooper. In that capacity, he was trained to investigate cases of Driving Under the Influence of Intoxicants ("DUII"). Plaza Decl. Ex. 1, at 7-8. ECF No. 22. Plaintiff also administered the tests during his tenure as a patrol trooper. *Id.* at 12. At his deposition, Plaintiff testified that, prior to the events giving rise to this case, he "sometimes" believed that he had a problem with alcohol. *Id.* at 21.

Defendant Brandon Black is a deputy sheriff employed by Defendant Douglas County Sheriff's Office ("DCSO"). Black Decl. ¶ 1. ECF No. 23. Black has been a law

enforcement officer since 2016 and has been employed by DCSO since 2018. *Id.* at ¶ 2. Black has training in traffic investigations, including DUII investigations. *Id.* At the time of the events giving rise to this case, Black had responded to nearly 100 vehicle crashes and had conducted or assisted with approximately 30 DUII investigations. *Id.*

Defendant Sergeant Jonathan Dorland is a deputy sheriff sergeant with DCSO. Dorland Decl. ¶ 1. ECF No. 24. Dorland has been a law enforcement officer since 2007 and has training in traffic investigations and DUII investigations. *Id.* at ¶ 2. Dorland estimates that, over the course of his career, he has conducted between 30 and 50 DUII investigations and has responded to hundreds of vehicle crashes. *Id.* During the relevant time, Dorland was the Watch Commander for DCSO and, as such, was Black's supervisor. *Id.* at ¶ 3.

On November 17, 2019, at 5:24 p.m., Black responded to an accident near Colonial Road and Melrose Road in Roseburg, Oregon. Black Decl. ¶ 3. The accident had been reported by a witness, Joseph Barkley. *Id.* Barkley reported that a red sports car had gone off the road and that the driver had left the scene in another vehicle. *Id.* Barkley had attempted to speak with the driver and reported that he believed that the driver may have been intoxicated. *Id.*

It took Black approximately 25 minutes to reach the scene of the accident. Black Decl. ¶ 5. The fire department arrived at the scene before Black and reported that the driver had returned to the scene and that he had refused medical treatment

by the fire department. *Id.* Dorland heard Black respond to the call and began heading to the crash site to assist Black. Dorland Decl. ¶ 3.

When Black arrived, he observed that the roadway where the accident occurred was flat and paved with a single lane going in either direction. Black Decl. ¶ 6. It was dusk and the road was dry and the temperature was 50 degrees. *Id.* The crashed sports car was heavily damaged and in a ditch to the right of the southbound lane. *Id.* at ¶ 7. The vehicle had also struck a barbed wire fence and knocked out several of the fence posts. *Id.* Black saw that the distance from where the car left the road to where it had crashed in the ditch was between 100 and 150 feet. *Id.* at ¶ 10. Black also observed that the car was facing the opposite direction of travel and appeared to be up against some trees. *Id.*

Black believed, based on his training and experience, that the crash was "not consistent with the roadway and weather conditions." Black Decl. ¶ 7. Black also noted that it "very unusual for a person to leave the crash scene." *Id.* Based on these observations and the reports from Barkley, Black believed that he would be investigating DUII and possibly other criminal offenses. *Id.*

Black approached Plaintiff, who was standing on the roadway speaking to firefighters. Black Decl. ¶ 8. Black observed that Plaintiff had "a few scratches and a small bump on the right side of his forehead" and that "his eyes were glossy." *Id.* Black asked Plaintiff what happened and Plaintiff began to speak before pausing and asking Black if he knew who Plaintiff was. *Id.* Black responded that he recognized Plaintiff as an OSP trooper working out of the office in Roseburg. *Id.* Black did not

observe that Plaintiff was slurring his words or sweating.  Halttunen Decl. Ex. 101, at 9.  ECF No. 28.

Plaintiff told Black that he had been working on the car, including work on the brakes and tires and that, after he finished, he had taken the car for a test drive. Black Decl. ¶ 9.  Plaintiff told Black that he drove on to Melrose Road and "got on it a little hard," but that he did not think he went faster than the speed limit.  *Id.* Plaintiff "said the vehicle broke loose and he took his foot off the gas pedal, at which point the vehicle 'looped around'" and "the brakes didn't work the way they should have, and he ended up in the ditch where the car was."  *Id.*  Based on the circumstances of the crash and on Plaintiff's statements, Black suspected that Plaintiff was driving recklessly at the time of the crash.  *Id.* at ¶ 10.

Black called Dorland and told Dorland about the situation.  Black Decl. ¶ 11. This call was the first time Dorland learned that the crash involved a law enforcement officer.  Dorland Decl. ¶ 3.  Dorland was already on his way to the scene of the crash and arrived shortly after speaking with Black.  Black Decl. ¶ 11.

The owner of the damaged fence, Charles Napier, was also present at the scene. Black Decl. ¶ 12.  Black spoke with Napier and suggested to Napier and Plaintiff that they exchange information so that Plaintiff's insurance could pay for the fence's repair.  *Id.*  Plaintiff had not provided his insurance information to Napier and Black observed that he did not seem interested in doing so until prompted by Black.  *Id.* Black was aware that Plaintiff had left the scene of the accident for at least 25

minutes.  *Id.*  Black believed that he had probable cause for the crime of Failure to Perform the Duties of a Driver, a Class A misdemeanor under ORS 811.700.  *Id.*

Black asked Plaintiff if he had been drinking and Plaintiff initially denied having had any alcohol, but amended by saying "Well, earlier today, a lot earlier today."  Black Decl. ¶ 13.  Black asked Plaintiff how much he'd had to drink and Plaintiff said that he'd had two Coors light beers.  *Id.*  At his deposition, Plaintiff testified that he had no "independent recollection" of how much he had had to drink that day, although he acknowledged that he'd told Black he'd had two beers.  Plaza Decl. Ex. 1, at 28.

In a telephone intake interview for treatment at West Coast Post-Trauma, dated November 26, 2019, Plaintiff stated that he'd been "drinking through the day" on November 17, 2019, and that he'd had seven 12-ounce beers between 12:00 p.m. and 4:30 p.m.  Plaza Decl. Ex 1, at 34, 36; Ex. 4, at 2; *see also* Halttunen Decl. Ex. 109, at 3 (describing his alcohol consumption, Plaintiff told West Coast Post-Trauma "Some days at most 7 over the course of the day have about [sic] 7 12 oz beers like the day of the incident.")   At his deposition, Plaintiff testified that he could not recall giving the intake interview statement and could not recall if the statement concerning the number of beers he'd consumed that day was accurate.  Plaza Decl. Ex. 1, at 35.

Once Plaintiff admitted to having consumed alcohol, Black asked Plaintiff if he could look at Plaintiff's eyes and if Plaintiff would submit to field sobriety tests ("FST").  Black Decl. ¶ 13.  Plaintiff responded that he did not want to perform FST.

*Id.* at ¶ 14.  Given Plaintiff's work as an OSP trooper, Black believed that Plaintiff knew the purposes and procedures for FST and that Plaintiff's refusal to submit to FST was because the tests would reveal that Plaintiff had consumed more alcohol than he had admitted to Black and that he had done so more recently than Plaintiff had admitted.  *Id.*

Dorland had arrived by this point and he also questioned Plaintiff.  Black Decl. ¶ 15.  Plaintiff told Dorland that he had been driving toward Roseburg when the crash occurred and that "he 'got on it' to see if the tires were 'hooking up better.'"  Dorland Decl. ¶ 5.  Plaintiff told Dorland that he had just rotated the tires and worked on the brakes and didn't know if the tires or the brakes had contributed to the accident.  *Id.*

Plaintiff also told Dorland that he had consumed two 12-ounce Coors light beers between 12:00 p.m. and 1:30 p.m.  Dorland Decl. ¶ 6.  Plaintiff repeatedly told Dorland that he had not consumed any alcohol since that time.  *Id.*

During the interaction, Dorland observed that Plaintiff's eyes were watery and Dorland "could smell a faint odor of alcoholic beverage coming from his person."  Dorland Decl. ¶ 7.  Dorland believed that Plaintiff's "statements of having two beers around noon with no additional consumption of alcohol was inconsistent with my observations."  *Id.*

Dorland asked Plaintiff why he did not want to allow Black to check his eyes and Plaintiff responded "'you can understand my position, we don't want to voluntarily participate in something that is going to give more evidence to the police about anything,'" and that the deputies "wouldn't get any evidence from doing field

sobriety tests but it's just not 'in your best interest.'" Dorland Decl. ¶ 8. Dorland believed that the FST would reveal evidence of Plaintiff's impairment and that Plaintiff, as an OSP trooper, knew what they would reveal. *Id.*

Plaintiff told Black and Dorland that Plaintiff's father had been traveling in a separate car ahead of Plaintiff when the crash occurred. Black Decl. ¶ 17. When the crash happened, Plaintiff's father drove Plaintiff home "to clean himself up and let his wife know." *Id.* By the time Plaintiff returned to the scene of the crash, the fire department had already arrived. *Id.*

Black questioned Plaintiff's father, William Gorman, who told Black that he had been working on the car with Plaintiff and "were having issues with the brakes, and they took it out for a test drive." Black Decl. ¶ 18. "William Gorman told me it was normal for them to have a beer while working on the car but denied that [Plaintiff] had any beer." *Id.*

Black also contacted Barkley, the original reporting party, by phone. Black Decl. ¶ 19. Barkley told Black that he saw Plaintiff get out of the car with a cut on his head and that had seen William Gorman help Plaintiff out of the ditch. *Id.* Barkley had asked Plaintiff if he was okay and Plaintiff responded that he was fine. *Id.* Barkley had told them to wait because he was calling 911 due to Plaintiff's bleeding head wound, but "[t]hey told him they were fine and got 'a little aggressive' then got into a different car and left." *Id.* Black asked why Barkley told dispatch that he thought Plaintiff might be intoxicated and Barkley said that he "thought it was weird because they were just in a crash and were wanting to leave" and that

Plaintiff "was stumbling climbing up the ditch but [Barkley] didn't know if it was due to him being intoxicated or due to the ditch having loose gravel." *Id.*

Dorland told Black that he smelled a faint odor of alcohol coming from Plaintiff. Black Decl. ¶ 20.  Black was suffering from a head cold that affected his sense of smell and so relied on Dorland's observations.  *Id.*

Dorland asked Plaintiff if he'd had anything to drink after the crash and Plaintiff responded that he had not.  Black Decl. ¶ 21.  Plaintiff told Black and Dorland that the last drink he'd had was around noon.  *Id.*  Dorland asked Plaintiff if he would submit to FST and Plaintiff again refused.  *Id.*

At that point, Black read Plaintiff his *Miranda* rights and asked if he understood those rights and Plaintiff answered that he did.  Black Decl. ¶ 22.  Black asked if Plaintiff would be willing to have his eyes checked, as part of an FST, and Plaintiff declined.  *Id.*  Black then read Plaintiff the standard *Rohrs* admonishment[1] before explaining and demonstrating the three FST.  *Id.*  Plaintiff again declined to submit to the FST.  *Id.*  At this point, Black "was even more convinced that [Plaintiff] was not being truthful with us and had driven impaired."  *Id.*

Black laid out the facts of his investigation to Dorland and both Dorland and Black agreed that there was probable cause to arrest Plaintiff for DUII and Failure

---

[1] The *Rohrs* admonishment is administered after a driver refuses to submit to FST and comes from *State v. Rohrs*, 157 Or. App. 494 (1998).  The admonishment Black administered to Plaintiff says:

> I am going to ask you to submit to purely physical SFST's.  None of the tests I will ask you to perform will require you to reveal your thoughts, beliefs or state of mind.  The tests will include the HGN test, the walk and turn test and the one leg stand tests.  Do you have any questions regarding these tests or what I am asking you to do.  Your refusal to submit to these purely physical tests <u>may</u> be used against you.

Black Decl. Ex. 2.

to Perform the Duties of a Driver.  Dorland Decl. ¶ 11.  Dorland also contacted his own supervisor, Lt. Tilley, by phone and relayed his observations to Lt. Tilley.  *Id.* Lt. Tilley concurred with Black and Dorland's assessment that there was probable cause to arrest Plaintiff.  *Id.*

At 7:25 p.m., Black placed Plaintiff under arrest for DUII and Failure to Perform the Duties of a Driver.  Black Decl. ¶ 24.  Black placed Plaintiff in the back seat of his patrol car and buckled his seatbelt.  *Id.*  During the process, Black smelled an odor of alcohol from Plaintiff.  *Id.*  Dorland remained at the scene of the crash to take photographs.  Dorland Decl. ¶ 12.

Black transported Plaintiff to the Douglas County jail and administered a breathalyzer test.  Black Decl. ¶ 25.  At 8:40 p.m., Plaintiff blew a breath sample of .070% BAC and at 8:43 p.m., Plaintiff blew a breath sample of .061%.  Black Decl. ¶ 25, Ex. 3.  Based on his training and experience, Black found this result "inconsistent with [Plaintiff's] assertions of having had only a couple of beers approximately eight hours prior."  Black Decl. ¶ 25.

Black cited Plaintiff for DUII in violation of ORS 811.010 and Failure to Perform the Duties of a Driver in violation of ORS 811.700.  Black Decl. ¶ 27.  Black also believed that he had probable cause to charge Plaintiff with Reckless Driving in violation of ORS 811.140.  Black Decl. ¶ 27.

On November 18, 2019, the local news published an article concerning Plaintiff's arrest with the headline "OSP trooper arrested for drunk driving." Halttunen Decl. Ex. 110.  The article quoted a DCSO spokesman who said that

"deputies determined [Plaintiff] was impaired at the time of the crash." *Id.* at 1. The article also noted that OSP officials had confirmed that Plaintiff "was placed on administrative leave pending an investigation." *Id.* at 2.

At his deposition, Plaintiff testified that he never read any of the articles concerning his arrest. Plaza Decl. Ex. 1, at 19. Nevertheless, Plaintiff believed that his arrest and the press release announcing his arrest damaged his reputation in law enforcement and that the publication of his arrest was malicious. Plaza Decl. Ex. 1, at 18, 20. Neither Black nor Dorland were involved in any public statement or broadcast concerning Plaintiff's arrest. Black Decl. ¶ 28; Dorland Decl. ¶ 13.

On January 9, 2020, Plaintiff was charged with DUII, Reckless Driving, and Failure to Perform the Duties of a Driver in *State v. Gorman*, Case No. 20CR01787. Plaza Decl. Ex. 3, at 1. The charge of Failure to Perform the Duties of a Driver was voluntarily dismissed on April 2, 2020. *Id.* Plaintiff filed a motion to dismiss the charges of DUII and Reckless Driving on September 21, 2020. *Id.* at 2. The motion asserted that Black and Dorland lacked probable cause to arrest Plaintiff. Halttunen Decl. Ex. 104. A hearing was held on the motion to suppress on March 10, 2021, and the motion was granted. Plaza Decl. Ex. 3, at 2. The prosecution voluntarily dismissed the remaining charges and a judgment of dismissal was entered on March 30, 2021. *Id.* at 11.

OSP took notice of the investigation into Plaintiff, but Plaintiff was never placed on unpaid leave by OSP. Plaza Decl. Ex. 1, at 16. Following his arrest for DUII, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"). Plaza

Decl. Ex. 2, at 6.  Plaintiff filed a workers compensation claim alleging occupational stress.  Plaza Decl. Ex. 1, at 16; Ex. 2, at 6.  Plaintiff's disability claim was approved in May 2021 and Plaintiff retired from OSP at the end of May 2021.  Plaza Decl. Ex. 1, at 14-15; Ex. 2, at 7.

## DISCUSSION

Plaintiff brings claims for unlawful seizure and violation of his right to substantive due process under the Fourth and Fourteenth Amendments against Black and Dorland.  Compl. ¶¶ 24-34.  ECF No. 1.  Plaintiff also brings a *Monell* claim[2] against DCSO alleging that DCSO failed to properly train, discipline, or supervise Black and Dorland and that DCSO ratified the conduct of Black and Dorland "by failing to discipline and failing to admit error."  *Id.* at ¶¶ 36, 37.

All claims are brought pursuant to 42 U.S.C. § 1983.  Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

During conferral with Defendants' counsel, Plaintiff agreed to dismiss his claim for violation of his substantive due process rights.  Plaza Decl. ¶ 2.  The Court

---

[2] *Monell v. New York Dept. Soc. Servs.*, 436 U.S. 658 (1978).

accepts this concession and that claim is DISMISSED.  The Court addresses the remaining claims below.

## I.     Fourth Amendment Unlawful Seizure

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government.  *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968).  Here, Plaintiff claims that there was no probable cause for Black and Dorland to arrest him on November 17, 2019, and so the arrest violated Plaintiff's Fourth Amendment rights. "A claim for unlawful arrest is cognizable under §1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (internal quotation marks and citation omitted).

### A. Preclusion

Plaintiff contends that Defendants are precluded from arguing that there was probable cause for Plaintiff's arrest because the Douglas County Circuit Court found that there was no probable cause when it granted Plaintiff's motion to suppress.

Collateral estoppel, or issue preclusion, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Stugell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).  This prevents "parties from contesting matters that they have had a full and fair opportunity to litigate," and serves to protect against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and

fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

"The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts," thereby promoting "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). "State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action." *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990).

The Oregon Supreme Court has held that issue preclusion applies if five requirements are met: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceedings; and (5) the prior proceeding was the type of proceedings to which this court will give preclusive effect. *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993). With respect to the final element, the Oregon Court of Appeals has held the rulings on motions to suppress are the "type of proceeding" the exercises a preclusive effect. *State v. Ipsen*, 288 Or. App. 402, 406 (2017).

In addition, the Supreme Court has held that the "general rule" should be that where "the application of offensive estoppel would be unfair to a defendant, a trial

judge should not allow the use of offensive collateral estoppel." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1970).

In this case, Defendants dispute whether Plaintiff has made a sufficient showing on the fourth element of issue preclusion—privity between Defendants and the parties to the prior proceeding. "A person may be bound by a previous adjudication either by reason of being a party in the case, or by reason of participation which is substantially equivalent to having been a party, or from having a legal relationship that is derived from one who was a party." *State Farm Fire & Cas. Co. v. Reuter*, 299 Or. 155, 160-61 (1985). Defendants assert that there was no privity between the prosecutor in Plaintiff's criminal case and Black and Dorland

This is not an issue of first impression in the District of Oregon. In *Lingo v. City of Salem*, Civ. No. 6:12-cv-01019-MC, 2014 WL 1347468 (D. Or. April 3, 2014), Judge McShane considered a similar situation in which the defendants, who were Salem city police officers, sought to defeat an assertion of issue preclusion in civil rights action based on a circuit court ruling on a motion to suppress during the criminal prosecution of the plaintiff. Judge McShane noted that the officers "did not have any measure of control over the Marion County prosecutor," and that their role was simply that of witnesses for the prosecution. *Id.* at *5 (internal quotation marks and citations omitted, alterations normalized). They could not call witnesses, could not direct the examination of the prosecution's witnesses, and could not choose counsel to represent the state at the suppression hearing, nor could they appeal the ruling once it was made. *Id.* In addition, the officers were employed by the City of

Salem, rather than the State of Oregon, and had "no direct, individual personal interest in the outcome of [the plaintiff's] case." *Id.* As a result, Judge McShane found that the defendant officers were not in privity with the prosecution and so declined to apply issue preclusion in the civil rights action. *Id.*; *see also Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971) (holding, in the context of California law, that the "defendants were city police officers not directly employed by the state; they had no measure of control whatsoever over the criminal proceeding and no direct individual personal interest in its outcome. In these circumstances there was no privity sufficient to invoke the doctrine of collateral estoppel.").

The Court finds that much the same reasoning applies to the present case. Once Plaintiff was charged by the prosecuting attorney, Black and Dorland's role was simply that of witnesses for the prosecution and, like the officers in *Lingo*, they had no control over the course or conduct of Plaintiff's prosecution and they had no right to appeal the adverse ruling on the motion to suppress. They were employees of Douglas County, rather than the State of Oregon, and had no personal interest in the outcome of the case. On this record, Black and Dorland, like the officers in *Lingo*, were not in privity with the prosecution in the criminal case against Plaintiff. As a result, they are not precluded from arguing that there was probable cause to arrest Plaintiff, notwithstanding the circuit court's ruling on the motion to suppress.

In addition, the Court notes that the charge of Failure to Perform the Duties of a Driver was voluntarily dismissed by the prosecution before the motion to suppress was filed. Even if the circuit court's ruling on the motion to suppress

exercised a preclusive effect with respect to the DUII and Reckless Driving charges (and the Court concludes that it does not) that preclusion would not extend to the charge of Failure to Perform the Duties of a Driver.

**B. Probable Cause to Arrest Plaintiff**

As noted, Plaintiff alleges that his arrest was unlawful because it was not supported by probable cause.

A warrantless arrest requires probable cause under the Fourth Amendment. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause exists if "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the persona arrested] has committed a crime." *Id.* (quoting *United States v. Smith*, 790 F.2d 780, 792 (9th Cir. 1986)). Probable cause is an objective standard. *Id.* Police are not required "to believe to an absolute certainty, or by clear and convincing evidence, or even by a preponderance of the available evidence" that a suspect has committed a crime. *Id.* at 1078. The officer must, however, be able to conclude that there is a "fair probability" that the suspect committed the crime. *United Stats v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).

> This essential determination, however, is not of the actuality of guilt, but rather of its likelihood. The factual predicates for a finding of probable cause need not approach that moral certainty of guilt upon which a conviction after trial must rest . . . [A] showing of probable cause involves considerably less than the demonstration of guilt demands. The indicia of guilt need not be absolute or even fully consistent; they may leave some room for doubt, and even for error.

*United States v. Blum*, 432 F.2d 250, 252 (9th Cir. 1970) (internal quotation marks and citation omitted).

"Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge." *Dickerson v. City of Portland*, Case No. 3:19-cv-01126-SB, 2020 WL 7391267, at *3 (D. Or. Dec. 16, 2020). "Thus, if there was probable cause for any of the charges made then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Id.* (internal quotation marks and citation omitted, alterations normalized, emphasis in original); *see also Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (noting that, because the defendant officer had probable cause to arrest the plaintiff for one charge, the then the arrest was not unconstitutional even if the officer lacked probable cause for another charge).

The existence of probable cause is a complete defense to a claim for wrongful arrest. *See Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986) (holding that "a police office has immunity if he arrests with probable cause."); *Cabrera v. Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1988) ("To prevail on his section 1983 claim for false arrest . . . [the plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

Plaintiff was charged with three offenses and the Court will address the question of probable cause for each in turn.

## 1.  DUII

Oregon law provides that a person commits the offense of driving under the influence of intoxicants if the person drives a vehicle while the person:

(a) Has 0.08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140, or 813.150

(b) Is under the influence of intoxicating liquor, cannabis, psilocybin, a controlled substance or an inhalant;

(c) Is under the influence of any combination of intoxicating liquor, cannabis, psilocybin, a controlled substance and an inhalant; or

(d) Within two hours after driving a vehicle, and without consuming alcohol in the intervening time, has 0.08 percent or more by weight of alcohol in the blood of the person, as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150.

ORS 813.010(1).

"A person is under the influence of an intoxicating liquor, controlled substance, or inhalant when the person's physical or mental faculties are adversely affected to a noticeable or perceptible degree. *State v. Miller*, 265 Or. App. 442, 445 (2014).

Plaintiff contends that, in the absence of physical signs of impairment such as swaying, slurred speech, or difficulty walking, there could not be probable cause to arrest Plaintiff for DUII. The Oregon Court of Appeals has held, however, that such overt physical manifestations of impairment are not necessary for an officer to form probable cause to arrest for DUII. *Miller*, 265 Or. App. at 445-47 (probable cause existed where there was no slurred speech or odor of alcohol but the defendant was "short-tempered and angry,"; refused or failed to provide documents to the officer; then sped off, committing several traffic infractions in front of the officer before saying that he did not recall committing the infractions).

Indeed, as this Court has previously observed, the "threshold for probable cause to believe that an individual has been driving under the influence is relatively low in Oregon." *Gage v. City of Baker City*, Civil No. 09-6107-AA, 2010 WL 954222, at *2 (D. Or. Mar. 11, 2010) (citing *State v. Gilmour*, 136 Or. App. 294 (1995) (officer stopped defendant after seeing him commit a traffic infraction after leaving a parking lot at 2:00 a.m., court held watery, bloodshot eyes and odor of alcohol were sufficient to establish objective probable cause); and *State v. Nagel*, 320 Or. 24 (1994) (probable cause found based on officer's observation of odor of alcohol, glassy eyes, and driver's difficulty removing driver's license)).

Here, the situation confronting Black and Dorland at the time of the arrest showed several factors tending to support the conclusion that Plaintiff had committed the crime of DUII. These included (1) the fact that Plaintiff had crashed his car on a flat, dry stretch of paved road in 50 degree weather; (2) the car was in a ditch between 100 and 150 feet from the roadway; (3) the reports from the Barkley concerning Plaintiff's behavior following the crash; (4) the fact that Plaintiff left the scene immediately and did not return for 25 minutes, despite knowing that Barkley was calling 911; (5) Plaintiff's eyes were observed to be glossy by Black and watery by Dorland; (6) Dorland smelled an odor of alcohol from Plaintiff during their conversation; and (7) Plaintiff admitted to having consumed alcohol earlier in the day.

On this record, the Court concludes that Black and Dorland had sufficient probable cause to arrest Plaintiff for DUII.

### 2. Failure to Perform the Duties of a Driver

Oregon law establishes a series of duties a driver must perform when property is damaged in a vehicle crash. ORS 811.700(1). If a driver fails to perform those duties, the failure is a Class A misdemeanor. ORS 811.700(3). In the specific case where a driver's vehicle "has been involved in a collision resulting only in damage to fixtures or property legally upon or adjacent to a highway," the driver must:

> (A) Take reasonable steps to notify the owner or person in charge of the property of the collision and of the driver's name and address, the vehicle owner's name and address and, if the driver's vehicle is a motor vehicle, the registration number of the motor vehicle, the name of the insurance carrier covering the motor vehicle, the insurance policy number of the insurance policy insuring the motor vehicle and the phone number of the insurance carrier.

> (B) Upon request and if available, exhibit any document issued as evidence of driving privileges granted to the driver.

ORS 811.700(1)(d).

Here, Plaintiff was driving on a public road when the crash occurred and Plaintiff's car damaged a barbed wire fence before ending up in a ditch. Plaintiff then left the scene of the crash for at least 25 minutes. Plaintiff did not attempt to locate the owner of the fence before leaving. When Plaintiff returned to the crash site, the owner of the fence, Napier, was present but Plaintiff did not make any effort to provide Napier with the required information until prompted to do so by Black.

On this record, the Court concludes that there was probable cause for Plaintiff to be cited and arrested for Failure to Perform the Duties of a Driver.

### 3. Reckless Driving

Oregon law provides that "[a] person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property." ORS 811.140(1). The definition of "recklessly" is derived from ORS 161.085. ORS 811.140(2). That statute, in turn, provides that "recklessly" means "that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exist." ORS 161.085(9). "The risk must be of such nature and degree that that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." *Id.* The offense of Reckless Driving is a Class A misdemeanor. ORS 811.140 (3).

Here, Plaintiff admitted that he "got on it" with the car when he was driving, but that he was also unsure of the reliability of the car's brakes or tires. Plaintiff lost control of the car, which went off the road, crashed into a fence and ended up in a ditch over 100 feet from the road. Based on the circumstances of the crash and Plaintiff's own statements, Black and Dorland had probable cause to arrest Plaintiff for Reckless Driving.

Because Black and Dorland had probable cause for the crimes of DUII, Failure to Perform the Duties of a Driver, and Reckless Driving, their arrest of Plaintiff was not a violation of Plaintiff's Fourth Amendment Rights. Because Plaintiff's constitutional rights were not violated, the Court need not reach Defendants'

arguments concerning qualified immunity. Defendants' Motion for Summary Judgment is granted as to the claims against Black and Dorland.

## II.    *Monell*

As noted, Plaintiff also brings *Monell* claims against DCSO. To prevail on a *Monell* claim, a plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernadino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Plaintiff's *Monell* claims fail for two independent reasons.

First, a claim for municipal liability under *Monell* is contingent on the violation of constitutional rights and a municipal defendant cannot be held liable if there is no constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). For the reasons discussed in the previous section, the Court has concluded that Black and Dorland did not violate Plaintiff's constitutional rights because their arrest of Plaintiff was supported by probable cause. Plaintiff's *Monell* claim against DCSO will also fail in the absence of a constitutional violation by the individual Defendants.

Second, DCSO is not the proper defendant for a *Monell* claim under § 1983. "Local governmental units, such as counties or municipalities, can be sued as a 'person' under Section 1983 if 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Harris v. City of Portland Police Dept.*, No. 3:15-cv-00853-HZ, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016) (quoting *Monell*, 436 U.S.

at 691). "Other government departments or entities can only be sued if they are intended to be separate and distinct legal entities." *Id.* The real party in interest here is Douglas County and not the Douglas County Sheriff's Office. *See Sullivan v. Multnomah Cnty.*, No. 3:19-cv-00995-JGZ, 2021 WL 4248082, at *13 (D. Or. Sept. 17, 2021) (dismissing a *Monell* claim against the Multnomah County Sheriff's Office because Multnomah County was the real party in interest); *Harris*, 2016 WL 740425, at *5 (D. Or. Feb. 24, 2016) ("The Portland Police Bureau is not a separate entity from the City of Portland and is not amenable to suit. It is merely the vehicle through which the city fulfills its police functions." (internal quotation marks and citation omitted, alteration normalized)).

For those two separate reasons, the Court concludes that DCSO is entitled to summary judgment on Plaintiff's *Monell* claim against it.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 21, is GRANTED. The Court will defer entry of final judgment in this case pending resolution of Defendants' Motion for Sanctions, ECF No. 32. The parties are directed to contact Courtroom Deputy Cathy Kramer within seven (7) days of the date of this Order to schedule oral argument on the Motion for Sanctions.

It is so ORDERED and DATED this  31st  day of August 2023

 /s/Ann Aiken                                    
ANN AIKEN
United States District Judge