**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

**ROBERT GORMAN,**

Plaintiff,

v.

**DOUGLAS COUNTY SHERIFFS' OFFICE; DEPUTY BRANDON BLACK; SERGEANT JONATHAN DORLAND; JOHN DOES 1-10,**

Defendants.

No. 6:21-cv-01622-AA

**OPINION & ORDER**

AIKEN, District Judge.

The Court has previously granted summary judgment in favor of Defendants. ECF No. 41. This case comes before the Court on Defendants' Motion to Compel and for Sanctions, ECF No. 32, and Plaintiff's Motion for Reconsideration, ECF No. 44. The Court heard oral argument on the issue of sanctions on October 24, 2023. ECF No. 43. For the reasons set forth below, the Motion to Compel and for Sanctions is GRANTED and the Motion for Reconsideration is DENIED.

## LEGAL STANDARD

### I. Motion for Reconsideration

Rule 60(b) governs reconsideration of "a final judgment, order, or proceeding" of the district court. The rule allows a district court to relieve a party from a final

judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied . . . or; (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). The party making a Rule 60(b) motion bears the burden of proof. *Rufo v. Inmates of Suffolk Cnty., Jail*, 502 U.S. 367, 383 (1992).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (discussing reconsideration under Rule 59(e), quotation marks omitted). "Motions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) (internal quotation marks and citations omitted, alterations normalized). A motion for reconsideration also "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

## II. Motion for Sanctions

Federal Rule of Civil Procedure 37(e) sets the standards for sanctions arising from the spoliation of electronically stored information ("ESI"). "Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." *Surowiec v. Capital Title Agency, Inc.*, 790

F. Supp.2d 997, 1005 (D. Ariz. 2011). Spoliation arises from the failure to preserve relevant evidence once a duty to preserve has been triggered. *Id.* at 1005.

"Rule 37(e) authorizes a court to sanction a party for losing or destroying ESI it had a duty to preserve." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 334 (D. Ariz. 2022). If ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court:

> (1) upon finding prejudice to another party from the loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)

"This rule establishes three prerequisites to sanctions: the ESI should have been preserved in the anticipation or conduct of litigation, it is lost through a failure to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Fast*, 340 F.R.D. at 335. If these requirements are satisfied, the Rule authorizes two levels of sanctions. Section (e)(1) permits a court, upon finding prejudice to another party from the loss of ESI, to order measures no greater than necessary to cure the prejudice. Section(e)(2) permits a court to

impose more severe sanctions such as adverse inference jury instructions or dismissal, but only if it finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "This rule provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on inherent authority." *Fast*, 340 F.R.D. at 335. In addition, the "relevant standard of proof for spoliation sanctions is a preponderance of the evidence." *Id.*

**BACKGROUND**

The facts of the case are set forth at length in the Court's prior Opinion and Order, ECF No. 41, and will not be reproduced here except as necessary. This factual background will primarily concern the discovery dispute that gives rise to Defendants' motion for sanctions.

On April 6, 2022, Defendants issued their first Request for Production ("RFP") in which they sought non-privileged communications including phone records and text messages from Plaintiff. Of note, this included "all phone records for Plaintiff's personal cell phone for November 16, 2019, through November 20, 2019, to include call logs, text messages, Facebook Messenger and equivalent messenger services, and social media activity." Plaza Decl. Ex. 1, at 6. ECF No. 33.

On May 18, 2022, Plaintiff responded that he did not have any text messages, messenger services, or social media activity and objected that the request "requires Plaintiff to search for and produce documents or information that are not within his possession, custody or control." Plaza Decl. Ex. 2, at 12. However, Plaintiff agreed

to provide his request for his phone logs and agreed to provide the logs themselves when they became available. *Id.* at 13. Plaintiff did not "provide any emails, diaries, notes, text messages, or other communications or documents to Defendants." Plaza Decl. ¶ 4.

Over the following weeks, Defendants corresponded with Plaintiff's counsel concerning other missing production. Plaza Decl. ¶ 5.

On July 25, 2022, Defendants' counsel conferred with Plaintiff's counsel on the specific issue of Plaintiff's missing phone records. Plaza Decl. ¶ 6. On September 22, 2022, Defendants' counsel sent a letter to Plaintiff's counsel concerning the lack of production relating to Plaintiff's cell phone. Plaza Decl. Ex. 3. In that letter, Defendants' counsel recounted that Plaintiff's counsel had told them that Plaintiff "would not know how to get the phone messages off his current phone," to which Defendants' counsel responded that "the 'how' is not our problem; he has a duty to provide the records and has multiple options available to do so." *Id.* at 3. Defendants' counsel advised that they would pursue a motion to compel, if necessary: "I remind you that this is a serious discovery issue and that we are entitled to the records in defense of the litigation. You again promised to visit with your client. I still have not heard back from you nor have we received any text messages." *Id.* Defendants' counsel received no response to the September 29 letter. Plaza Decl. ¶ 6.

At that point, the date set for depositions was drawing nearer and Plaintiff had still not received any response on the contents of Plaintiff's phone and so issued subpoenas to Plaintiff's friends and acquaintances. Plaza Decl. ¶¶ 8-9.

Depositions were held in October 2022, by which time Defendants had still not received the records they were seeking and so Defendants informed Plaintiff they would be holding the depositions open. Plaza Decl. ¶ 10.

During the depositions, Plaintiff and his long-time partner confirmed that they were in possession of Plaintiff's phone from the time of the crash and that Plaintiff had been actively using the phone until just before the depositions commenced in October 2022. Plaza Decl. ¶ 11. During the deposition, Plaintiff testified that he had been using the phone until September 2022 when it was broken after being stepped on. Plaza Decl. Ex. 7, at 8. Subsequent investigation revealed that Plaintiff's phone was operational and powered up on October 31, 2022, because the phone was still connected to the network on that date. Trapp Decl. ¶ 6. ECF No. 34.

On November 3, 2022, nearly seven months after receiving Defendants' RFP, Plaintiff finally produced some text messages, but those messages only went back to July 2022, well short of the relevant period. Plaza Decl. ¶ 13. "Aside from these text messages, Plaintiff never produced any other texts, emails, notes, diaries, or other electronic records in response to Defendants' April RFP." *Id.*

At this point, Defendants sought assistance from the Court and, on December 2, 2022, the Court ordered Plaintiff to provide his phone to Defendants and to sign a release for the period from November 1, 2019, through November 8, 2021. ECF No. 20.

As discovery progressed, Defendants' efforts to subpoena Plaintiff's friends and acquaintances bore fruit as they learned of text messages sent to and from Plaintiff

concerning his plans to sue the County. Plaza Decl. ¶ 15. Of note, these communications were not produced by Plaintiff, but were produced by third parties in response to subpoenas. *Id.*

On December 20, 2022, Defendants deposed Plaintiff's medical provider, Dr. Suzanne Best, and learned that Plaintiff had sent emails to Dr. Best requesting edits to her medical reports to remove statements Plaintiff had made to Dr. Best concerning the circumstances of Plaintiff's arrest. Plaza Decl. ¶ 16; Ex. 11. Once again, this email was not produced by Plaintiff despite falling with the bounds of Defendants' RFP. It also reveals Plaintiff's efforts to "sanitize" the circumstances of his arrest. Plaza Decl. ¶ 16. Despite further conferral, Plaintiff never produced his emails. *Id.* at ¶ 17.

Following the Court's order of December 2, 2022, Defendant subpoenaed Plaintiff's cellular service provider and learned that, on the day of the incident, Plaintiff made or received 22 phone calls and that he made or received an additional 31 phone calls on the following day. Plaza Decl. ¶ 18. However, the service provider could only provide a transactional history of text messages and was unable to provide the contents of the messages. *Id.* Plaintiff's failure to timely provide the contents of his phone prior to it being damaged meant that the only way to learn the contents of the messages was by digital examination of the damaged phone. *Id.*

Defendants hired Unique Wire, Inc. to perform a digital examination of the phone, which resulted in the retrieval of 6,118 pages of material. Plaza Decl. ¶ 19. Upon review of the recovered material, there was evidence that significant portions

of Plaintiff's text message history, including communications made during the time before and after the crash, were still missing, either irretrievably lost or deliberately deleted by Plaintiff. *Id.* at ¶ 20. Recovered text messages revealed that Plaintiff had sent an email to another friend in the aftermath of Plaintiff's arrest which was never produced by Plaintiff, despite being responsive to Defendants' RFP. *Id.* at ¶ 22.

Upon review of the digital extraction, Defendants also learned that Plaintiff had deleted the contents of his cloud account on June 16, 2021, approximately five months before commencement of this action. Plaza Decl. ¶ 23.

Defendants incurred costs related to Plaintiff's failure to preserve and produce ESI in response to Defendants' RFP. Defendants paid $83.00 for the subpoena to Verizon. Plaza Decl. ¶ 24; Ex. 13. Defendants also paid $3,930.00 for the digital examination of Plaintiff's phone. Plaza Decl. ¶ 25; Trapp Decl. ¶ 7, Ex. 1. Defendants also incurred attorney fees in pursuing Plaintiff's unproduced ESI. Plaza Decl. at ¶ 28.

## DISCUSSION

The Court will first address the Motion for Reconsideration before moving on to Defendants' request for sanctions. As noted, the facts of this case are set forth at length in the Court's Opinion and Order of August 31, 2023 (the "O&O").

### I. Motion for Reconsideration

Plaintiff seeks reconsideration of the Court's determination that Defendant Deputy Brandon Black and Defendant Sergeant Jonathan Dorland (together, the

"Deputy Defendants") were not in privity with the special prosecutor in the criminal case against Plaintiff.

The issue of privity was fully litigated in the original motion. Plaintiff argued that Defendants were precluded from arguing that there was probable cause to arrest Plaintiff for Driving Under the Influence of Intoxicants ("DUII") because the Douglas County Circuit Court had granted a motion to suppress in Plaintiff's criminal prosecution. In resolving the issue, the Court applied the five-part test from *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993):

> The Oregon Supreme Court has held that issue preclusion applies if five requirements are met: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceedings; and (5) the prior proceeding was the type of proceedings to which this court will give preclusive effect.

O&O, at 14.

The Court concluded that there was no issue preclusion on the issue of probable cause because the Deputy Defendants were not in privity with the prosecutor in the criminal case. O&O at 16. The Court followed the reasoning of another District of Oregon decision, *Lingo v. City of Salem*, Civ. No. 6:12-cv-01019-MC, 2014 WL 1347468 (D. Or. April 3, 2014), to conclude:

> Once Plaintiff was charged by the prosecuting attorney, Black and Dorland's role was simply that of witnesses for the prosecution and, like the officers in *Lingo*, they had no control over the course or conduct of Plaintiff's prosecution and they had no right to appeal the adverse ruling on the motion to suppress. They were employees of Douglas County, rather than the State of Oregon, and had no personal interest in the outcome of the case. On this record, Black and Dorland, like the officers

> in *Lingo*, were not in privity with the prosecution in the criminal case against Plaintiff. As a result, they are not precluded from arguing that there was probable cause to arrest Plaintiff, notwithstanding the circuit court's ruling on the motion to suppress.

O&O, at 16.

Plaintiff asserts that this determination was in error because, unlike the city police officers in *Lingo*, the Deputy Defendants were employed by Douglas County and so had the same employer as the special prosecutor in the criminal case. This argument misapprehends the role of a criminal prosecutor in Oregon. A criminal prosecution is undertaken on behalf of the State of Oregon, rather than the county. *See* ORS 8.660(1) ("The district attorney shall attend the terms of all courts having jurisdiction of public offenses within the district attorney's county, and, except as otherwise provided in this section, conduct, *on behalf of the state*, all prosecutions for such offenses therein." (emphasis added)); *Marteeny v. Brown*, 321 Or. App. 250, 271-72 (2022) (explaining the statutory scheme under which district attorneys represent the state within their districts); *State v. Coleman*, 131 Or. App. 386, 390 (1994) ("Indeed, throughout Oregon's history, district attorneys have been regarded as state officers who act as prosecutors for the executive branch."). Accordingly, the special prosecutor was acting on behalf of the state, rather than Douglas County, and did not have the sort of relationship with the Deputy Defendants that Plaintiff suggests in his motion. This fact undercuts much of the reasoning supporting Plaintiff's arguments for reconsideration.

Plaintiff also suggests that this Court erred by relying on federal law, rather than state law to support the Court's conclusion. Plaintiff takes particular issue with

the Court's application of the reasoning of *Lingo*. The Court notes that in the O&O, it stated: "'State law governs the application of collateral estoppel or issue preclusion to a state court judgment in a federal civil rights action.'" O&O at 14 (quoting *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990)). The Court went on to apply the standards for preclusion set forth by the Oregon Supreme Court and the Oregon Court of Appeals. O&O, at 14-15 (citing *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99 (1993); *State v. Ipsen*, 288 Or. App. 402 (2017); *State Farm Fire & Cas. Co. v. Reuter*, 299 Or. 155 (1985)).

Plaintiff's suggestion that the Court improperly relied on federal authority is further muddled by Plaintiff's acknowledgement that "the Oregon Supreme Court has turned to federal courts for guidance on the issue of collateral estoppel." Pl. Mot. 8. The thrust of Plaintiff's argument is that Plaintiff disagrees with the Court's decision to follow the reasoning of *Lingo*, a decision issued by a federal court in the District of Oregon considering a factually similar case, rather than a different federal court decision, *Block v. Washington State Bar Assoc.*, CASE NO. C15-2018RSM, 2016 WL 1258387 (W.D. Wash. May 31, 2016). That case, which arises out of the Western District of Washington, is not factually analogous to the present case and involves claim preclusion, rather than issue preclusion. *Id.* at *10-11. *Block* would not have been useful guidance for the Court in resolving the motion for summary judgment and it provides no basis for reconsideration.

Plaintiff also points to the discussion of privity in *Thomas v. U.S. Bank Nat. Ass'n*, 244 Or. App. 457, 473 (2011), a class action in which former members of a

certified class were found to be in privity with the named representatives of the class. In that case, the Oregon Court of Appeals held:

> The Oregon Supreme Court has explained that privity attaches to persons who are not parties to an action but who are connected with it in their interests [and] are affected by the judgment with reference to interests involved in the action, as if they were parties. Privity likewise encompasses those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims. However, privity will not be found for purposes of issue preclusion unless the result can be defended on principles of fundamental fairness in the due-process sense. Consequently, a third party will be precluded from litigating an issue in a subsequent proceeding only when it is realistic to say that the third party was fully protected in the first trial.

*Thomas*, 244 Or. App. at 473 (internal quotation marks and citations omitted, alterations normalized).

The Court's analysis in the O&O adheres with the standard set forth in *Thomas*. This adherence is unsurprising, as both *Thomas* and the O&O were applying principles derived from the same corpus of Oregon law. In the O&O, the Court found that the Deputy Defendants were merely witnesses, with no personal interest in the outcome of the criminal prosecution and that they had no right or power to control the course of the case or to appeal an unsatisfactory decision. O&O, at 16. As a consequence, the Court found no privity between the Deputy Defendants and the prosecutor. The Court's conclusion is entirely consistent with *Thomas*.

In sum, the Court finds no reason to depart from its prior conclusion. Plaintiff's Motion for Reconsideration is DENIED.

## II. Sanctions

After briefing was complete Defendants' motion for summary judgment, Defendants filed a motion for sanctions alleging that Plaintiff violated his discovery obligations. ECF No. 32. Defendants assert that Plaintiff failed to preserve his text messages and certain emails and that doing so violated his obligations to preserve evidence and produce material responsive to Plaintiff's discovery requests. Much of the parties briefing concerned Defendants' request for the more severe sanctions—adverse inferences, jury instructions, or dismissal—that are permitted by Rule 37(e)(2). The Court has granted summary judgment in favor of Defendants, however, which moots the issue of the more severe sanctions. In practical terms, success in their motion for summary judgment will restrict Defendants' request for sanctions to the lesser penalties in Rule 37(e)(1).

Rule 37(e)(1) sanctions are available if Defendants were prejudiced by Plaintiff's failure to preserve the contents of his phone. "Prejudice exists where 'the [spoiling party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'" *RG Abrams Ins. v. Law Office of C.R. Abrams*, 342 F.R.D. 461, 507 (C.D. Cal. 2022) (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)); *see also Paisley Park Enters, Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019) ("Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case."). "Proving that lost evidence is relevant can be a difficult task, however, because the evidence no longer exists," and to show prejudice

from spoliation, courts "have held that a party must only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Fast*, 340 F.R.D. at 339 (internal quotation marks and citations omitted, alterations normalized); *see also Paisley Park Enters.*, 330 F.R.D. at 236 (finding prejudice where "Plaintiffs are left with an incomplete record of the communications that Defendants had with both each other and third parties."). "Courts have discretion under Rule 37(e)(1) to determine how to assess prejudice on a case-by-case basis." *RG Abrams Inc.*, 342 F.R.D. at 507. "If the party seeking the information has been prejudiced, the Court may order whatever measures are necessary to cure the prejudice." *Id.*

Here, Plaintiff asserts that to preserve or recover the ESI sought by Defendants, he would have had to perform a digital extraction, as was ultimately done by Defendants, and that to require such an extraction goes beyond the requirement of reasonable efforts under Rule 37. However, the evidence before the Court is that the digital extraction was rendered difficult and expensive by severe damage to the phone, Feucht Decl. ECF No. 40, and that the phone was not damaged until months after its contents were requested by Defendants. In addition, there is no evidence that Plaintiff communicated to Defendants that it would be impossible or unreasonably difficult for Plaintiff to recover the contents of his phone. Rather, discovery communications between the parties indicate that Plaintiff made little or no effort to preserve or produce the contents of his phone and Plaintiff's counsel informed Defendants that he "did not think [his] client would know how to get phone messages off his current phone." Plaza Decl. Ex. 3, at 3. When Plaintiff was asked

at his deposition whether he had "attempted or looked to see" if he could get older communications from his phone, Plaintiff responded "I've contacted Verizon, yes." Plaza Decl. Ex. 7, at 8. These responses are not indicative of a reasonable effort to secure, preserve, or produce ESI as required under the Rules.

As noted, Plaintiff's phone was subsequently damaged shortly before Plaintiff's deposition. Defendants were obliged to seek assistance from the Court in order to have Plaintiff's damaged phone digitally examined and to pay for the extraction of the phone's contents. That process was only partially successful and a number of text messages remained unrecoverable—either irretrievably lost as a result of the damage to the phone or possibly, and more concerningly, deliberately deleted by Plaintiff. As in *Paisley Park*, Defendants have been left with incomplete picture of Plaintiffs communications in the period following the crash and Plaintiff's arrest. The evidence is that many of the missing messages from the period following the crash were exchanged between Plaintiff and a close friend, Ray Dube. Plaza Decl. ¶ 20. The surviving messages between Plaintiff and Dube suggest a frequent and substantial exchange of information and that the missing communications very likely contained relevant and probative information concerning the circumstances of the crash and Plaintiff's subsequent arrest. *Id.* at ¶ 21. The loss of the text messages and other ESI "threatened to distort the resolution of the case." *RG Abrams Ins.*, 342 F.R.D. at 508. The Court concludes that Defendants were prejudiced by Plaintiff's spoliation

of ESI and, because Defendants prevailed at summary judgment, the Court need not reach the question of intent required for the more severe sanction of Rule 37(e)(2).[1]

The Court therefore moves on to what degree of sanction is necessary to cure the prejudice suffered by Defendants. There are two principal ways that this prejudice might be remedied—(1) through awarding the costs incurred by Defendants in attempting to recover the contents of Plaintiff's phone and (2) by awarding Defendants' attorney fees associated with the litigation of the ESI discovery issues in this case.

With respect to the digital examination of Plaintiff's phone and the subpoena to Verizon, the Court concludes that those costs might have been avoided entirely had Plaintiff provided a timely and complete response to Defendants' RFP. Defendants requested the contents of Plaintiff's phone in April 2022 and Plaintiff testified at his deposition that the phone was intact and in working order through at least September 2022. Plaintiff's failure to provide the contents in a timely fashion, before the phone was damaged, prejudiced Defendants and obliged them to incur additional costs to recover the contents of the phone. The Court concludes that the imposition of those costs against Plaintiff is a reasonable sanction under Rule 37(e)(1) for Plaintiff's failure to meet his discovery obligations. The Court therefore imposes costs in the

[1] The Court notes, however, that there is evidence of intentional spoliation in this case, particularly with respect to the failure to preserve or produce emails, the missing text messages from the time of the crash and Plaintiffs arrest, and the deletion of Plaintiff's cloud account. Had Defendants not prevailed on their Motion for Summary Judgment, the Court would have given serious consideration to imposing sanctions under Rule 37(e)(2).

amount of $4,013.00 for the cost of the subpoena to Verizon and the cost of the digital examination of Plaintiff's damaged phone.

With respect to attorney fees, Defendants seek to recover for 39.6 hours at a rate of $240 per hour. Plaintiff does not dispute the rate claimed by Defendants' attorneys. The Court has reviewed the Oregon State Bar Economic Survey and concludes that the claimed rate is reasonable.

Plaintiff disputes the reasonableness of the hours expended, but does not, in his Response brief, point to any specific time entry as unnecessary or excessive. The Court has reviewed the time entries, Plaza Decl. ¶ 28, and concludes that the hours claimed were reasonably expended pursuing the unpreserved and unproduced ESI and in drafting the motion for sanctions. Had Plaintiff simply produced the contents of his phone at the time they were requested, as he was obliged to do under the Rules, Defendants would not have been prejudiced and would have had no cause to pursue sanctions. Plaintiff failure to meet his discovery obligations was compounded by the damage to his phone, which made the retrieval of its contents more onerous, time-consuming, and expensive. The Court concludes that, to remediate the prejudice suffered as a result of the spoliation, Defendants are entitled to attorney fees related to the unpreserved and unproduced ESI in the full amount requested as a sanction under Rule 37(e)(1). The Court therefore imposes an attorney fee sanction in the amount of $9,504.00, reflecting attorney fees for 39.6 hours at a rate of $240 per hour.

## CONCLUSION

For the reasons set forth above, the Motion to Compel and for Sanctions ECF No. 32, is GRANTED. Pursuant to Federal Rule of Civil Procedure 37(e), the Court awards Defendants' costs in the amount of $4,013.00 and attorney fees in the amount of $9,504.00 as a sanction for Plaintiff's failure to preserve and produce ESI as required under the Rules. The Motion for Reconsideration, ECF No. 44, is DENIED. Consistent with the Court's prior Order granting summary judgment, final judgment shall be entered in this case.

It is so ORDERED and DATED this 21st day of March 2024.

/s/Ann Aiken
ANN AIKEN
United States District Judge